IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| In re: | Chapter 11 |
| INTERLOGIC OUTSOURCING, INC., et al.,[1] | Case No. 20-00325-swd |
| Debtors. | (Jointly Administered) |

**SUMMARY COVER SHEET FOR FIRST INTERIM APPLICATION OF ICE MILLER LLP AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ALLOWANCE OF INTERIM COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FROM AUGUST 23, 2019 THROUGH AUGUST 31, 2020**

| | |
|---|---|
| Name of applicant | Ice Miller LLP |
| Name of client | The Official Committee of Unsecured Creditors |
| Time period covered by this fee statement | August 23, 2019 through and including August 31, 2020 |
| Total compensation sought this period | $2,665,399.21 |
| Total expenses sought this period | $44,687.30 |
| Petition dates | August 10 and 11, 2019 |
| Date of order approving employment (and effective retention date) | October 30, 2019 (retention authorized retroactive as of August 23, 2019) |
| Total compensation approved by interim order to date | $0 |
| Total expenses approved by interim order to date | $0 |
| Total compensation paid to date | $1,494,698.30 |
| Total expenses paid to date | $35,752.15 |
| Blended hourly rate in this application for all attorneys | $575.07 |
| Blended hourly rate in this application for all timekeepers | $551.54 |
| Compensation sought and already paid pursuant to a monthly compensation order but not yet allowed by interim order | $1,494,698.30 |
| Expenses sought and already paid pursuant to a monthly compensation order but not yet allowed by interim order | $35,752.15 |
| Are any rates higher than those approved or disclosed at retention? | Yes – see Paragraph 10 regarding annual rate changes. |

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Interlogic Outsourcing, Inc. (1273); IOI Payroll Services, Inc. (1202); TimePlus Systems, LLC (9477); IOI West, Inc. (1405); Lakeview Technology, Inc. (1451); Lakeview Holdings, Inc. (7589); and ModEarn, Inc. (3473). The location of the Debtors' headquarters is: 1710 Leer Drive, Elkhart, Indiana 46514.

## TIMEKEEPERS INCLUDED IN FEE APPLICATION

The professionals who rendered services in these Chapter 11 Cases during the Compensation Period are:

| NAME OF PROFESSIONAL | POSITION 2019/2020 | DEPARTMENT | YEAR ADMITTED | HOURLY BILLING RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|---|
| Abramowitz, Chelsea | Associate | Business | J.D. 2019 (NY bar admission pending) | $375 (2020) | 142.6 | $53,475.00 |
| Acquaviva, John | Paralegal | Bankruptcy and Financial Restructuring | NA | $395 (2019) $405 (2020) | 631.5 | $254,179.50 |
| Anderson, Daniel | Senior Counsel | Litigation | 1993 | $460 (2019) $495 (2020) | 546.2 | $265,451.50 |
| Cannizzaro, John | Associate/ Of Counsel | Bankruptcy and Financial Restructuring | 2009 | $345 (2019) $365 (2020) | 554.1 | $197,699.25 |
| Crist, Tyson | Partner | Bankruptcy and Financial Restructuring | 1999 | $475 (2019) $495 (2020) | 36.7 | $17,782.50 |
| Dahmann, Kristina | Associate | Litigation | 2013 | $365 (2019) | 3.2 | $1,168.00 |
| DeGroote, Jessa | Associate | Litigation | 2015 | $395 (2020) | 14.1 | $5,569.50 |
| DeLucia, Louis | Partner | Bankruptcy and Financial Restructuring | 1958 | $755 (2019) $790 (2020) | 962.7 | $722,297.50 |
| Fiedler, Alyson | Partner | Bankruptcy and Financial Restructuring | 2000 | $715 (2019) $750 (2020) | 738.2 | $535,807.25 |
| Gasper, George | Partner | Litigation | 2004 | $550 (2020) | 195.2 | $107,360.00 |
| Giampolo, John | Partner | Bankruptcy and Financial Restructuring | 2004 | $650 (2019) $685 (2020) | 111.8 | $75,123.50 |
| Hokanson, Jeffrey | Senior Counsel/ Partner | Business | 1989 | $595 (2019) $625 (2020) | 206.2 | $114,598.25 |
| Jacobs, Valeri | Librarian/ Paraprofessional | N/A | NA | $275 (2019) | 1.6 | $456.50 |
| Joris, Wendy | Paralegal | Litigation | NA | $415 (2019) $365 (2020) | 66.4 | $25,446.00 |
| Ott, Michael | Of Counsel | Bankruptcy and Financial Restructuring | 2007 | $415 (2019) $435 (2020) | 583.9 | $253,612.50 |
| Polatsek, Daniel | Partner | Litigation | 1996 | $580 (2019) $610 (2020) | 129.3 | $78,426.00 |
| Srivastava, Kishala | Associate | Litigation | 2019 | $265 (2019) $275 (2020) | 4.9 | $1,302.50 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Swetnam, Daniel | Partner | Bankruptcy and Financial Restructuring | 1982 | $560 (2019) $590 (2020) | 249.6 | $146,616.00 |
| Torf, Jason | Partner | Bankruptcy and Financial Restructuring | 1998 | $525 (2019) | 14.2 | $7,455.00 |
| **Total:** | | | | | **5192.4** | **$2,863,826.25** |

\* Amounts calculated before application of any travel time reduction and $187,797.04 courtesy discount discussed in paragraph 52.

## TOTAL FEES FOR THE COMPENSATION PERIOD

| PROFESSIONALS | BLENDED HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|
| Partners | $682.88 | 2,643.9 | $1,805,466.00 |
| Associates | $373.27 | 164.8 | $61,515.00 |
| Senior Counsel | $486.00 | 546.2 | $265,451.50 |
| Of Counsel | $396.58 | 1,138 | $451,311.75 |
| **All Attorneys:** | **$575.07** | **4,492.9** | **$2,583,744.25** |
| Paralegals/Paraprofessionals: | $400.40 | 699.5 | $280,082.00 |
| **All Professionals:** | **$551.54** | **5,192.40** | **$2,863,826.25** |

\* Amounts calculated before application of any travel time reduction and $187,797.04 courtesy discount discussed in paragraph 52.

## COMPENSATION BY PROJECT CATEGORY

| PROJECT CATEGORY | TOTAL HOURS BILLED | AMOUNT |
|---|---|---|
| Asset Analysis and Recovery (.00002) | 3070.2 | $1,656,118.00 |
| Asset Disposition (.00003) | 151.6 | $97,162.50 |
| Avoidance Action Analysis (.00005) | 301.3 | $154,884.50 |
| Case Administration (.00008) | 486 | $269,863.00 |
| Claims Administration and Objections (.00009) | 24.3 | $14,169.50 |
| Employee Benefits and Pensions (.0011) | 38.8 | $24,515.00 |
| Employment and Fee Applications (.00012) | 370.8 | $133,269.46 |
| Employment and Fee Applications and Objections (.00013) | 22.6 | $13,699.00 |
| Financing and Cash Collateral (.00014) | 142.2 | $87,440.50 |
| Meetings and Communications with Creditors (.00015) | 29.9 | $18,425.00 |
| Non-Working Travel (.00016) | 143.2 | $54,470.75 |

| | | |
|---|---|---|
| Plan and Disclosure Statement (.00017) | 57.9 | $42,095.50 |
| Relief from Stay and Adequate Protection (.00019) | 166.9 | $99,286.00 |
| **Totals:** | **5,005.70** | **$2,665,399.21** |

\* Amounts calculated after application of any travel time reduction and $187,797.04 courtesy discount discussed in paragraph 52.

## EXPENSE SUMMARY

| EXPENSE CATEGORY | AMOUNT |
|---|---|
| Courier Charges & Postage (including Fedex) | $2,234.84 |
| Filing Fees | $831.00 |
| Business Meals | $517.17 |
| Other Expenses | $922.65 |
| Process Servicer | $1,569.06 |
| Court Reporter Fees for Depositions, Transcripts, Remote Conferences/Hearings | $20,293.18 |
| Lien Searches | $3,340.46 |
| Travel Expenses (Hotel and Transportation) | $14,913.19 |
| Photocopies | $65.75 |
| Legal Research Expense – WESTLAW & Access Indiana Research (no charge) | $0.00 |
| **Total:** | **$44,687.30** |

IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| In re: | Chapter 11 |
| INTERLOGIC OUTSOURCING, INC., et al.,[1] | Case No. 20-00325-swd |
| Debtors. | (Jointly Administered) |

**FIRST INTERIM APPLICATION OF ICE MILLER LLP AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ALLOWANCE OF INTERIM COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FROM AUGUST 23, 2019 THROUGH AUGUST 31, 2020**

Ice Miller LLP ("Ice Miller"), as counsel to The Official Committee of Unsecured Creditors, (the "Committee"), hereby submits this *First Interim Application of Ice Miller LLP as Counsel to the Official Committee of Unsecured Creditors for Allowance of Interim Compensation for Professional Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred from August 23, 2019 through August 31, 2020* (the "Application"), and pursuant to the Court's *Order Establishing Procedures for Interim Compensation* (the "Interim Compensation Procedures Order") [Dkt. No. 894] requests that the Court approve this Application and authorize the allowance and payment on an interim basis compensation for professional services performed by Ice Miller and reimbursement its actual and necessary expenses for the period commencing August 23, 2019 through August 31, 2020 (the "Compensation Period"). In support of this Application, Ice Miller respectfully states as follows:

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Interlogic Outsourcing, Inc. (1273); IOI Payroll Services, Inc. (1202); TimePlus Systems, LLC (9477); IOI West, Inc. (1405); Lakeview Technology, Inc. (1451); Lakeview Holdings, Inc. (7589); and ModEarn, Inc. (3473). The location of the Debtors' headquarters is: 1710 Leer Drive, Elkhart, Indiana 46514.

**Preliminary Statement**

1.      Ice Miller serves as the Committee's co-counsel in these jointly administered chapter 11 cases (the "Chapter 11 Cases").  The Debtors originally filed their petitions for relief in the United States Bankruptcy Court for the Northern District of Indiana (the "Indiana Bankruptcy Court").  On January 21, 2020, the Indiana Bankruptcy Court entered an order transferring the Chapter 11 Cases to this Court.  During the Compensation Period, Ice Miller provided advice and services to the Committee related to the Chapter 11 Cases as described below.

2.      Ice Miller's efforts to advise and represent the Committee in these Chapter 11 Cases during the Compensation Period were necessary and of substantial benefit to the Committee's discharge of its powers and duties in these Chapter 11 Cases.  The professional services performed and expenses incurred were actual and necessary to advise on and defend the Committee's claims, duties, rights, and obligations in these Chapter 11 Cases; represent and advise the Committee with respect to the Debtors' sale of assets; investigate the Debtors' operations and assets and the claims arising out of the prepetition check-kiting scheme engaged in by the Debtors' pre-petition principal, Najeeb Ahmed Khan ("Khan"); analyze and respond to the Debtors' motions for post-petition financing, executory contract and lease assumption and rejection, and related relief; conduct plan and settlement negotiations with all stakeholders, including KeyBank National Association, Wells Fargo, N.A., and others; participate in the mediation and negotiate the settlement and compromise of the martial support claims of Nancy Khan, Khan's non-debtor spouse; and provide all other services necessary for the Committee to perform its function in these Chapter 11 Cases.  In light of the nature of these cases, Ice Miller's charges for professional services performed and expenses incurred are reasonable under the applicable standards.  Ice

Miller respectfully requests that the Court approve this Application and allow interim compensation for professional services performed and reimbursement for expenses as requested.

3.      This Application has been prepared in accordance with sections 105(a), 330, 331 and 503(b)(1)(A) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the *Order Authorizing the Retention and Employment of Ice Miller LLC as Co-Counsel for the Official Committee of Unsecured Creditors Nunc Pro Tunc to August 23, 2019* (the "Retention Order") [Dkt. No. 441], the Indiana Bankruptcy Court's *Guidelines for Compensation for Services and Reimbursement of Expenses of Professionals in Cases Pending in Bankruptcy Court before Judge Harry C. Dees, Jr.* (the "Indiana Guidelines"), and the U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases, effective June 11, 2013 (the "UST Guidelines").  Though the Chapter 11 Cases were before the Indiana Bankruptcy Court during the period covered by this Application, Ice Miller has also prepared this Application in accordance with LBR 2016-2 and this Court's *Memorandum Regarding Allowance of Compensation and Reimbursement Of Expenses for Court-Appointed Professionals* (the "Local Guidelines," and, together with the Indiana Guidelines and the UST Guidelines, the "Fee Guidelines").

4.      The Committee's Chairperson, Kim Barrier of the Center for the Homeless, Inc., has been given the opportunity to review the Application and has approved the compensation and reimbursement of expenses requested herein.

## Factual Background and Jurisdiction

5.      Between August 10 and 11, 2019 (the "Petition Dates"), the Debtors filed voluntary petitions for relief under chapter 11 of the United States Code (as amended, the "Bankruptcy

Code"). On August 16, 2019, the Indiana Bankruptcy Court ordered the joint administration of these Chapter 11 Cases [Dkt. No. 101]. The Debtors remain in possession and control of their assets as debtors-in-possession, and no trustee or examiner has been appointed.

6.      The United States Trustee filed its Appointment and Notice Appointing Unsecured Creditors' Committee on August 22, 2019 [Dkt. No. 148] and its Amended Appointment and Notice Appointing Unsecured Creditors' Committee on August 27, 2019 [Dkt. No. 190], by which it appointed the Committee to serve in these Chapter 11 Cases pursuant to the authority granted by 11 U.S.C. § 1102.

7.      On October 30, 2019, the Indiana Bankruptcy Court entered the Retention Order by which it authorized the Committee to retain Ice Miller as its co-counsel [Dkt. No. 441], along with the firm of Hammerschmidt, Amaral & Jonas ("HAJ").

8.      On March 11, 2020, the Court entered the Interim Compensation Procedures Order.

9.      The Committee and Ice Miller have agreed that Ice Miller shall be compensated on an hourly basis plus reimbursement of actual and necessary expenses incurred, and that all allowances of fees and expenses be paid as allowed by the Court.

10.      At engagement, Ice Miller informed the Committee that the normal hourly billing rates of professionals employed by Ice Miller ranged from $285 to $875 per hour for attorneys, and $220 to $430 per hour for paralegals, subject to increase in the future with notice and Court approval. The standard rates of Ice Miller's professionals changed on January 1, 2020. The normal hourly billing rates of professionals employed by Ice Miller now range from $240 to $835 per hour for attorneys, and $225 to $405 per hour for paralegals. Hourly rate differences for professionals who billed in both 2019 and 2020 are reflected in the summary above. Any rate increase is in-line with increases for other professionals within the firm, within Ice Miller's geographic area, and

within the type of practice each attorney is involved in.  Ice Miller respectfully requests that the Court approve compensation for fees incurred after January 1, 2020 at each professional's annually adjusted hourly rate.

11.    Ice Miller advised the Committee that, from time to time and as appropriate, Ice Miller may utilize other attorneys, paraprofessionals, and clerks at rates usual and customary for the types of services to be performed.  Ice Miller sometimes charges different rates depending upon the locality in which an engagement is taking place.  The rates charged for each Ice Miller professional and paraprofessional in this engagement are equal to or lower than the rates each such professional or paraprofessional would charge in the locality in which he or she is based.  The fees charged by Ice Miller are usual and customary for the work performed, reasonable based upon its capabilities and the market range for comparable firms, and squarely in-line with the fees routinely allowed in cases in the Sixth and Seventh Circuits.

12.    Ice Miller also advised the Committee that, in addition to the hourly billing rates set forth above, Ice Miller customarily charges its clients for various non-overhead ancillary services, costs and expenses incurred, including photocopying, postage and other service costs, computer research, mileage, travel expenses, and other disbursements specifically applicable to the services provided to the Committee.

13.    Ice Miller has agreed to charge $0.15 per page for standard black and white copies, $0.50 per page for standard color copies, and $1.00 per page for facsimile transmissions.

14.    The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334.  Venue lies properly in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b) (2).

## Summary of Prior Compensation

15.     This Application is the first interim application filed by Ice Miller seeking the interim approval of fees and expenses pursuant to the Interim Compensation Procedures Order.

16.     On March 13, 2020, Ice Miller filed its *First Monthly Fee Statement of Ice Miller LLP as Counsel to the Official Committee of Unsecured Creditors for Payment of Compensation and Reimbursement of Expenses Incurred from August 23, 2019 through January 31, 2020* [Dkt. No. 903] (the "First Fee Statement").  Through its First Fee Statement, Ice Miller requested interim allowance of $993,828.25 in fees and $18,192.51 in expenses incurred for the period beginning August 23, 2019 through January 31, 2020; and payment of $795,062.60 (representing 80% of the fees to be allowed) and $18,192.51 (representing 100% of expenses to be allowed) for a total distribution of $813,255.11 in accordance with the Interim Compensation Procedures Order.  No party objected, and on April 10, 2020, Ice Miller received the sum of $813,255.11 from the Debtors.

17.     On April 8, 2020, Ice Miller filed its *Second Monthly Fee Statement of Ice Miller LLP as Counsel to the Official Committee of Unsecured Creditors for Payment of Compensation and Reimbursement of Expenses Incurred from February 1, 2020 through February 29, 2020* [Dkt. No. 954] (the "Second Fee Statement").  Through its Second Fee Statement, Ice Miller requested interim allowance of $162,722.50 in fees and $74.96 in expenses for the period beginning February 1, 2020 through February 29, 2020, and payment of $130,178.00 (representing 80% of the fees to be allowed) and reimbursement of $74.96 (representing 100% of expenses to be allowed) for a total distribution of $130,252.96 in accordance with the Interim Compensation Procedures Order. No party objected, and on May 5, 2020, Ice Miller received the sum of $130,252.96 from the Debtors.

18.     On June 16, 2020, Ice Miller filed its *Third Monthly Fee Statement of Ice Miller LLP as Counsel to the Official Committee of Unsecured Creditors for Payment of Compensation and Reimbursement of Expenses Incurred from March 1, 2020 through March 31, 2020* [Dkt. No. 1070] (the "Third Fee Statement").  Through its Third Fee Statement, Ice Miller requested interim allowance of $171,653.50 in fees and $3,863.39 in expenses for the period beginning March 1, 2020 through March 31, 2020, and payment of $137,322.80 (representing 80% of the fees to be allowed) and reimbursement of $3,863.39 (representing 100% of expenses to be allowed) for a total distribution of $141,186.19 in accordance with the Interim Compensation Procedures Order. No party objected and Ice Miller received the sum of $141,186.19 from the Debtors.

19.     On June 19, 2020, Ice Miller filed its *Fourth Monthly Fee Statement of Ice Miller LLP as Counsel to the Official Committee of Unsecured Creditors for Payment of Compensation and Reimbursement of Expenses Incurred from April 1, 2020 through April 30, 2020* [Dkt. No. 1074] (the "Fourth Fee Statement").  Through its Fourth Fee Statement, Ice Miller requested interim allowance of $183,392.50 in fees and $0.00 in expenses for the period beginning April 1, 2020 through April 30, 2020, and payment of $146,714.00 (representing 80% of the fees to be allowed) and reimbursement of $0.00 (representing 100% of expenses to be allowed) for a total distribution of $146,714.00 in accordance with the Interim Compensation Procedures Order.  No party objected and Ice Miller received the sum of $146,714.00 from the Debtors.

20.     On September 8, 2020, Ice Miller filed its *Fifth Monthly Fee Statement of Ice Miller LLP as Counsel to the Official Committee of Unsecured Creditors for Payment of Compensation and Reimbursement of Expenses Incurred from May 1, 2020 through May 31, 2020* [Dkt. No. 1135] (the "Fifth Fee Statement").  Through its Fifth Fee Statement, Ice Miller requested interim allowance of $366,289.50 in fees and $6,011.63 in expenses for the period beginning May 1, 2020

through May 31, 2020, and payment of $293,031.60 (representing 80% of the fees to be allowed) and reimbursement of $6,011.63 (representing 100% of expenses to be allowed) for a total distribution of $293,031.60 in accordance with the Interim Compensation Procedures Order. No party objected and Ice Miller received the sum of $293,031.60 from the Debtors.

21.     Contemporaneous with filing this interim application, Ice Miller filed its *Sixth Monthly Fee Statement of Ice Miller LLP as Counsel to the Official Committee of Unsecured Creditors for Payment of Compensation and Reimbursement of Expenses Incurred from June 1, 2020 through June 30, 2020* (the "Sixth Fee Statement"). Through its Sixth Fee Statement, Ice Miller requested interim allowance of $284,108.50 in fees and $10,291.41 in expenses for the period beginning June 1, 2020 through June 30, 2020, and payment of $227,286.80 (representing 80% of the fees to be allowed) and reimbursement of $10,291.41 (representing 100% of expenses to be allowed) for a total distribution of $237,578.21 in accordance with the Interim Compensation Procedures Order.

22.     Contemporaneous with filing this interim application, Ice Miller filed its *Seventh Monthly Fee Statement of Ice Miller LLP as Counsel to the Official Committee of Unsecured Creditors for Payment of Compensation and Reimbursement of Expenses Incurred from July 1, 2020 through July 31, 2020* (the "Seventh Fee Statement"). Through its Seventh Fee Statement, Ice Miller requested interim allowance of $225,124.50 in fees and $4,978.40 in expenses for the period beginning July 1, 2020 through July 31, 2020, and payment of $180,099.60 (representing 80% of the fees to be allowed) and reimbursement of $4,978.40 (representing 100% of expenses to be allowed) for a total distribution of $185,078.00 in accordance with the Interim Compensation Procedures Order.

23.     Contemporaneous with filing this interim application, Ice Miller filed its *Eighth Monthly Fee Statement of Ice Miller LLP as Counsel to the Official Committee of Unsecured Creditors for Payment of Compensation and Reimbursement of Expenses Incurred from August 1, 2020 through August 31, 2020* (the "Eighth Fee Statement").  Through its Eighth Fee Statement, Ice Miller requested interim allowance of $313,298.50 in fees and $1,275.00 in expenses for the period beginning August 1, 2020 through August 31, 2020, and payment of $250,638.80 (representing 80% of the fees to be allowed) and reimbursement of $1,275.00 (representing 100% of expenses to be allowed) for a total distribution of $251,913.80 in accordance with the Interim Compensation Procedures Order.

24.     Accordingly, as of the date of this Application, the Debtors have paid Ice Miller $1,494,698.30 of the $2,665,399.21 in fees sought to be allowed pursuant to this Application, with $1,170,700.91 remaining to be paid upon entry of an order approving this Application.

## Case Status

25.     Since its retention, Ice Miller has worked diligently on behalf of the Committee in an effort to investigate the events that gave rise to these Chapter 11 Cases, analyze all potential avenues for recovery for the Debtors' creditors, and maximize the Debtors' bankruptcy estates. The following timeline discusses several of the major events in this case that have required substantial work on behalf of Ice Miller and the Committee's other professionals.

### The DIP Financing Motion

26.     On August 12, 2019, the Debtors filed their *Emergency Motion for Entry of Interim and Final Orders (I) Authorizing Post-Petition Secured Superpriority Financing pursuant to Bankruptcy Code Sections 105(a), 362, 364(c)(1), 364(c)(2), 364(c)(3) and 364(d), (II) Authorizing the Debtors' Use of Cash Collateral pursuant to Bankruptcy Code Section 363(c),*

*(III) Granting Adequate Protection pursuant to Sections 361, 363 and 364 of the Bankruptcy Code,*

*(IV) Modifying the Automatic Stay and (V) Setting Final Hearing pursuant to Bankruptcy Rules*

*4001(b) and 4001(c)* (the "DIP Financing Motion").

27.     On August 16, 2019, the Indiana Bankruptcy Court entered an order approving the

DIP Financing Motion on an interim basis.

28.     On August 22, 2019, the United States Trustee, pursuant to 11 U.S.C. § 1102,

appointed the Committee.

29.     On September 5, 2019, the Committee filed its objection to the DIP Financing

Motion.  Among other things, the Committee asserted that it should be granted the authority to

challenge KeyBank's claims and liens as a condition of granting final relief under the DIP

Financing Motion.

30.     On September 12, 2019, the Indiana Bankruptcy Court entered the Final DIP Order,

which granted the Debtors and KeyBank very broad relief, but preserved for the Committee the

ability to challenge KeyBank's claims and liens.

**The Bid Procedures Motion and the Sale Motion**

31.     On August 19, 2019, less than two weeks after the Petition Dates, the Debtors filed

their *Motion For Entry of an Order (I) Approving the Bidding Procedures, (II) Scheduling the Bid*

*Deadlines and the Auction, (III) Approving the Form and Manner of Notice Thereof, and (IV)*

*Granting Related Relief* (the "Bid Procedures Motion") [Dkt. No. 139].  In it, the Debtors laid out

their plan for a "going concern" sale of the Debtors' business.

32.     On August 26, 2019, the Committee filed an objection to the Bid Procedures

Motion [Dkt. No. 169] as did the United States Trustee [Dkt. No. 166].

33.    On August 29, 2019, the Indiana Bankruptcy Court entered an order granting the Bid Procedures Motion as to the timing and process of the proposed sale of substantially all of the Debtors' Assets, but reserving its ruling on many of the Committee's and the United States Trustee's other objections (the "Bid Procedures Order") [Dkt. No. 203].

34.    On September 12, 2019, the Debtors filed their *Motion for Entry of an Order (I) Approving the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* (the "Sale Motion") [Dkt. No. 270].  And on September 19, 2019, the Debtors filed a Notice of Successful Bidder and Purchase Agreement [Dkt. No. 298]. Despite the Debtors' prior assertion that they reached out to over 70 potential buyers and were in active discussions with ten, only two interested parties submitted bids.  One potential bidder ultimately withdrew its interest, leaving PrimePay as the only bidder.  PrimePay's offer essentially involved purchasing the Debtors' customer lists for $3.5 million and winding down the Debtors as a going concern.

35.    The Committee, the United States Trustee, and multiple creditors objected to the Sale Motion.  [Dkt. Nos. 303, 305, 307, 309, 312, 317, and 318].

36.    On September 30, 2019, the Indiana Bankruptcy Court entered its order approving the Sale Motion.

**The Khan Bankruptcies**

37.    On or about October 8, 2019, Khan[2] and certain entities he controls[3] (the "Khan Entities," and with Khan, the "Khan Debtors") filed voluntary petitions for relief under Chapter

---

[2] *In re Najeeb Ahmed Khan*, Bankr. W.D. Mich. Case No. 19-04258-swd.

[3] *In re Khan Aviation, Inc.*, Bankr. W.D. Mich. Case No. 19-04261-swd; *In re GN Investments, LLC*, Bankr. W.D. Mich. Case No. 19-04262-swd; *KRW Investments, Inc.*, Bankr. W.D. Mich. Case No. 19-04264-swd; *NJ Realty, LLC, Bankr. W.D. Mich.*

11 in the United States Bankruptcy Court for the Western District of Michigan. Mark Iammartino is the duly appointed Chapter 11 Trustee for Khan's bankruptcy estate (the "Khan Trustee"). Kelly Hagan is the duly appointed Chapter 11 Trustee in the Khan Entities' bankruptcy estates (the "Khan Entities Trustee").

38.     On November 1, 2019, the United States Trustee appointed an official committee of unsecured creditors for the Khan bankruptcy estate (the "Khan Committee").

39.     On November 22, 2019, the United States Trustee, the Khan Trustee, and the Khan Entities Trustee conducted a meeting of creditors as required by 11 U.S.C. § 341 for each of the Khan Debtors' cases.

40.     Since the filing of the Khan Debtors' cases, the two trustees have proceeded to liquidate the personal property assets of the Khan Debtors, most of which the Committee believes were acquired with IOI customer funds, and the proceeds of which should be used to pay IOI's creditors.

**The Nancy Khan Mediation**

41.     During the pendency of these Chapter 11 Cases, as well as during the pendency of the bankruptcy cases filed by the Khan Debtors, Khan's wife Nancy Khan instituted a separate maintenance action in Michigan domestic relations court and sought relief from stay to permit that court to divide the Khans' marital assets. Despite the Committee's understanding that almost all of the Khans' marital assets are proceeds of fraud derived from IOI's customers' funds, Nancy Khan asserted an interest in a huge portion of the equity in the Khan Debtors' estates.

42.     The parties were ultimately referred to mediation before Judge Rhodes in an attempt to resolve these issues so that the assets of the Khan Debtors' estates could flow to the

---

Case No. 19-04266-swd; *In re NAK Holdings, LLC*, Bankr. W.D. Mich. Case No. 19-04267-swd; *Sarah Air, LLC*, Bankr. W.D. Mich. Case No. 19-04268-swd.

victims of the fraud. The Committee and its professionals have been actively involved in these negotiations in order to maximize the recovery available for the Debtors' creditors and the victims of the fraud. The mediation ultimately resulted in a settlement under which Mrs. Khan agreed to withdraw her filed claim and waive any right to any recovery in any of the related bankruptcy cases in exchange for the abandonment of certain specifically identified estate property to her. *See* Order Approving Global Settlement Agreement with Nancy L. Khan (Doc. 1113) at ¶ 9.

**The Wells Fargo Dispute**

43.     In November 2019, Wells Fargo filed a motion for relief from stay seeking court approval to set off positive balances in accounts in the name of Debtors IOI and Timeplus against an overdraft on a third account in the name of IOI. On behalf of the Committee, Ice Miller analyzed the issues presented by the motion and filed an objection to it, and given the fact-intensive nature of the issues presented, sought discovery from Wells Fargo. Ice Miller participated in numerous settlement discussions regarding the Wells Fargo issues, including an in-person meeting and several conference calls. These negotiations resulted in a settlement, which is currently pending Court approval.[4]

**The Committee's Investigation**

44.     Pursuant to its powers and duties under 11 U.S.C. § 1103(c), the Committee has been diligently investigating the Debtors' prepetition acts, conduct, assets, liabilities, and financial condition and the operation of Debtors' businesses, including but not limited to investigating the facts and circumstances surrounding Khan's prepetition fraud.

---

[4] The Debtors recently filed a motion seeking authority to file the schedules to the parties' Settlement Agreement under seal. For the reasons stated in that motion, the terms of the settlement will not be detailed herein.

45.    The Committee has so far obtained discovery from the Debtors, KeyBank, Lake City Bank, Berkshire Bank, Chase Bank, and 1st Source Bank, and where permitted by applicable protective orders, has shared that discovery with the Debtors and KeyBank.

46.    Ice Miller, HAJ, and Baker Tilly are currently analyzing this information, which the Committee believes will lead to substantial additional sources of recovery for the Debtors' estates and creditors.

**Plan and Disclosure Statement**

47.    A disclosure statement and plan have not yet been approved and confirmed in these Chapter 11 Cases.  However, the Committee, the Debtors, the Khan Trustee, the Khan Entities Trustee, and the Khan Committee have been diligently negotiating a potential consensual plan that will benefit all estates and their respective creditors.

48.    Further, the Committee has and continues to consult constantly with counsel for the Debtors, the Khan Trustee, the Khan Entities Trustee, and the Khan Committee in order to ensure the efficient administration of the respective estates and avoid duplication of efforts.

**Request for Compensation and Reimbursement of Fees and Expenses**

49.    Pursuant to the Interim Compensation Procedures Order, Ice Miller requests entry of an Order (i) allowing and approving its fees and expenses incurred during the Compensation Period on an interim basis; and (ii) directing the Committee to pay Ice Miller said fees and expenses, including the 20% holdback from any compensation paid pursuant to a fee statement under the Interim Compensation Procedures Order.

50.    Ice Miller's billing statements, attached hereto as **Exhibit A**, set forth in detail the nature of the legal services rendered by Ice Miller, the dates on which Ice Miller's personnel rendered such legal services, the identity of Ice Miller's attorneys and paralegals who performed

such legal services, the time spent by each of Ice Miller's personnel in performing such legal services, the hourly rate charged for each of the professionals, the amount of fees attributable to each such legal service performed by Ice Miller's attorneys, and break time and expenses out into matters related to well-defined categories of services.  **Exhibit A-1** consists of billing statements for the period covered by the First Fee Statement, August 23, 2019 through January 31, 2020. **Exhibit A-2** consists of billing statements for the period covered by the Second Fee Statement, February 1, 2020 through February 29, 2020.  **Exhibit A-3** consists of billing statements for the period covered by the Third Fee Statement, March 1, 2020 through March 31, 2020.  **Exhibit A-4** consists of billing statements for the period covered by the Fourth Fee Statement, April 1, 2020 through April 30, 2020.  **Exhibit A-5** consists of billing statements for the period covered by the Fifth Fee Statement, May 1, 2020 through May 31, 2020.  **Exhibit A-6** consists of billing statements for the period covered by the Sixth Fee Statement, June 1, 2020 through June 30, 2020. **Exhibit A-7** consists of billing statements for the period covered by the Seventh Fee Statement, July 1, 2020 through July 31, 2020.  **Exhibit A-8** consists of billing statements for the period covered by the Eighth Fee Statement, August 1, 2020 through August 31, 2020.

51.     The attached cover sheet contains a summary of the fees and expenses incurred by Ice Miller during the Compensation Period.  All of the services performed by Ice Miller have been billed at the hourly rates established by Ice Miller by all denoted timekeepers as set forth therein.

52.     During the Compensation Period, Ice Miller attorneys and paraprofessionals expended a total of 5,192.40 hours in connection with the reasonable and necessary services performed for the Committee.  The amount of fees incurred during the Compensation Period totals $2,665,399.21.  This value reflects a total courtesy discount of $187,797.04 applied to fees under categories for Asset Analysis and Recovery, Employment and Fee Applications and various other

categories.  The timing of and relief sought in the Debtors' motion to approve the Interim Compensation Procedures created some inefficiencies in Ice Miller's completion of its first interim fee application, which is being filed contemporaneously with this monthly fee statement.  Ice Miller applied discounts so as not to burden the estate with the increased time required to account for these issues.  Discounts were also applied where Ice Miller performed certain tasks at the Committee's request but agreed to discount some or all of the time for cost efficiency, such as certain witness examinations under oath.  Additionally, as reflected in Ice Miller's billing statements, a number of time entries were given "No Charge" courtesy discounts for instances when the complexity or urgency of certain matters required the participation of multiple Ice Miller attorneys collaborating their efforts.  While such courtesy discounts were voluntarily applied to this Statement, Ice Miller maintains that all tasks performed during this Compensation Period were necessary and beneficial to the Committee's discharge of its powers and duties and Ice Miller reserves the right to seek compensation for performance of any such tasks in future Statements.

53.     The attached cover sheet also contains a summary of timekeepers included in this Application who performed services for the Committee during the Compensation Period, the capacities in which each timekeeper is employed by Ice Miller, the department in which each timekeeper practices, the hourly billing rate charged by Ice Miller for services performed by each timekeeper, the year in which each timekeeper was first licensed to practice law, where applicable, and the aggregate number of hours expended and fees billed by each timekeeper.  The hourly billing rates for legal services are identical to the rates generally charged by Ice Miller to its non-bankruptcy clients.

54.     During the Compensation Period, Ice Miller incurred expenses in connection with its representation of the Committee totaling $44,687.30.  Itemizations of these expenses are

attached hereto as **Exhibit B-1, B-2, B-3, B-4, B-5, B-6, B-7** and **B-8**, respectively covering expenses sought under the First Fee Statement, Second Fee Statement, Third Fee Statement, Fourth Fee Statement, Fifth Fee Statement, Sixth Fee Statement, Seventh Fee Statement and Eighth Fee Statement. The attached cover sheet contains an expense summary specifying the categories of expenses for which Ice Miller is seeking reimbursement and the total amount for each such expense category. Ice Miller submits that each expenditure was a necessary and reasonable cost incident to the performance of Ice Miller's services for the Committee.

55. There is no agreement or understanding between Ice Miller and any other person, other than members of Ice Miller, for the sharing of compensation to be received for services rendered in these cases. During the Compensation Period, Ice Miller has not received any payment or promises of payment from any source for services rendered or to be rendered in any capacity whatsoever in connection with the matters covered by this Application (other than in accordance with the Interim Compensation Procedures Order).

56. The fees charged by Ice Miller in this case are billed in accordance with Ice Miller's existing billing rates and procedures in effect during the Compensation Period. The rates Ice Miller charges for the services rendered by its professionals and paraprofessionals in these Chapter 11 Cases generally are the same rates Ice Miller charges for non-bankruptcy matters. Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable bankruptcy and non-bankruptcy cases in a competitive national legal market.

**Summary of Services Performed by Ice Miller during the Compensation Period**

57. During the Compensation Period, Ice Miller performed the professional services described herein for the Committee in order to efficiently and thoroughly assist the Committee with its duties in these Chapter 11 Cases.

21

58.    The following is a summary of the significant professional services rendered by Ice Miller during the Compensation Period, organized in accordance with Ice Miller's internal system of project or task codes, which are derived directly from applicable UST Guidelines.

**Asset Analysis and Recovery (Matter 00002): $1,656,118.00 (3070.2 hours)**

59.    Time billed to this category includes initial internal and external planning and strategy efforts related to identifying and liquidating assets and claims for the benefit of the estate; preparation of Rule 2004 motions against KeyBank, Wells Fargo, Lake City Bank, Berkshire Bank, 1st Source Bank, Bank of America, PNC Bank, Cornerstone CPA Group, and Crowe to obtain information about the movement of the Debtors' assets prepetition and information regarding the prepetition fraud and to assess possible claims the Debtors' estates may have; obtaining extensive consensual discovery from the Debtors and KeyBank; negotiation of protective orders and an information sharing protocol to facilitate discovery; analysis of Khan's personal assets and those of the Khan Entities; complex investigation of the Debtors' books, records, and other financial information; extensive analysis of potential claims and causes of action against Khan, KeyBank, other processing banks, and other parties in interest; coordination with the Committee's financial advisor, Baker Tilly, regarding same; coordination with counsel for the Debtors, counsel for Khan Trustee, counsel for the Khan Entities Trustee, and counsel for the Khan Committee regarding same; and conducting interviews of Khan and the Debtors' representatives.

60.    The time spent in this category has directly benefited the Debtors' estates and their creditors.  The Committee and its professionals have been actively analyzing multiple sources of recovery, including potential claims against Khan, his entities, KeyBank, other processing banks, and the Debtors' prepetition professionals. Khan's fraudulent scheme was lengthy and complex. As a result, factual discovery and claim assessment in this case was also complex. By coordinating

22

with the Debtors and other parties in interest, Ice Miller has facilitated the fast and efficient assembly and dissemination of discoverable information.  To date, Ice Miller is the only estate fiduciary that has conducted any extensive Rule 2004 discovery. Because of Ice Miller's efforts, the Committee and the Debtors' estates should soon be in a position to recover substantial assets for the benefit of the Debtors' creditors.

61.    The Committee therefore asserts that all of the time billed to this category constitutes reasonable and necessary expenses commensurate with a case of this size and complexity that benefited the estates at the time provided.

**Asset Disposition (Matter 00003): $97,162.50 (151.6 hours)**

62.    This category contains work specifically related to the disposition of the Debtors' business, including analysis of the proposed bid procedures for the sale of the Debtors' business; drafting the Committee's objection to same; communications with Debtors' counsel, KeyBank, and the United States Trustee regarding same; analysis of the Debtors' Sale Motion; drafting of the Committee's objection to same; preparation of discovery for a contested sale hearing; review of competing asset purchase agreements from prospective purchasers; review of the transition services agreement for sale of Debtors' business; the completion of negotiations to finalize the sale of Debtors' business and protect its existing creditors and customers; representation of the Committee and the interests of its constituency with respect to the Nancy Khan mediation; and representation of the Committee and the interests of its constituency with respect to the Wells Fargo dispute.

63.    Ice Miller's work in this category has been of substantial value to the Debtors' estates.  As was laid out in the objections to the Bid Procedures Motion filed by the Committee and the United States Trustee, and as was reaffirmed by the objections of the Committee, the

United States Trustee, and multiple creditors to the Sale Motion, the Debtors' plan to sell its customer list raised several trouble concerns, including:

- the extremely accelerated schedule under which the Debtors wished to conduct a sale;

- the lack of information provided by the Debtors;

- the apparent failure to prime the market or conduct a robust sale process intended to maximize value for the estates;

- the fact that the sale would constitute an impermissible *sub rosa* plan;

- the impropriety of certain bid protections; and

- the fact that the sale appeared designed solely to benefit KeyBank and not the estates' thousands of other creditors.

64.    The efforts of Ice Miller, along with HAJ and the United States Trustee, helped ensure that the sale was fair and robust, that the Debtors' creditors and customers were protected, and that all relevant issues were presented to the Indiana Bankruptcy Court for consideration.  In addition to ensuring the best sale under the circumstances, Ice Miller and HAJ obtained guaranties that the Debtors' existing customers, who make up a substantial portion of the Committee's constituency and who were the direct victims of Khan's alleged fraud, would have continuing service pending the transition from IOI to PrimePay and would have their personal data protected. While the Committee continues to believe that a better price could have been had for the Debtors' business as a going concern, Ice Miller's work on behalf of the Committee in this category was reasonable, necessary, and commensurate with a case of this size and complexity and benefited the estates at the time provided.

**Avoidance Action Analysis (Matter 00005): $154,884.50 (301.3 hours)**

65.    This category includes work performed by Ice Miller related to its investigation and analysis of potential avoidance actions, including an examination of potential causes of action against KeyBank; analysis of the discovery related to such causes of actions; drafting of a

complaint to challenge KeyBank's prepetition claims and liens and assert other claims against KeyBank related to Khan's alleged fraud; analysis of the effect of the Final DIP Order as it relates to the Committee's standing to bring such a challenge; and preparation of a motion to confirm such standing.

66.     The efforts of Ice Miller and the Committee's other professionals have been vitally important to the Debtors' estates.  Because of the unusually broad relief granted by the Indiana Bankruptcy Court in the Final DIP Order, unless KeyBank's claims and liens are timely challenged, KeyBank's claims would be entitled to priority over essentially all of the assets of the Debtors' estates to the prejudice of all other creditors.  The Court has confirmed the Committee's standing to bring claims against KeyBank, which the Committee anticipates will provide a substantial benefit to the estates and their creditors.

67.     The fees in this category constitute reasonable and necessary expenses commensurate with a case of this size and complexity that benefited the estates at the time provided.

**Case Administration (Matter 00008): $269,863.00 (486 hours)**

68.     Work in this category includes review of first day declarations and pleadings; calls with the Committee and the Committee's chair; interviews with financial advisors; preparation of Committee bylaws; communications with the United States Trustee regarding certain administrative matters; preparation of internal billing procedures and guidelines; preparation of the Committee's Rule 2019 statement; resolution of conflicts issues; notices of appearance; deadline tracking; pro hac vice applications; transcript requests; venue transfer issues; reviews of Debtors' monthly operating reports; work assignment and management; coordination with counsel for the Debtors, the Khan Trustee, the Khan Entities Trustee, and the Khan Committee; and other legal work necessary to the functioning of the Committee and administration of the case.

69.     The Committee asserts that all of the time billed to this category constitutes reasonable and necessary expenses commensurate with a case of this size and complexity that benefited the estates at the time provided.

**Employee Benefits and Pensions (Matter 00011): $24,515.00 (38.8 hours)**

70.     Work in this category primarily involved Ice Miller's review of the Debtors' Key Employee Retention Program ("KERP") and Key Employee Incentive Program ("KEIP") motion [Dkt. No. 221], which included comparing the KERP and KEIP against plans approved and disapproved in similar cases; drafting and filing an objection to said motion; and consulting with the Debtors to ensure the terms ultimately approved by the Indiana Bankruptcy Court were beneficial to creditors of the Debtors' estates.

71.     The Committee asserts that all of the time billed to this category constitutes reasonable and necessary expenses commensurate with a case of this size and complexity that benefited the estates at the time provided.

**Employment and Fee Applications (Matter 00012): $168,288.50 (370.8 hours)**

72.     Work in this category included work related to preparation of Ice Miller's retention application; work related to Baker Tilly's retention application; and work related to preparation of the First Fee Statement, the Second Fee Statement, and this initial interim fee application.  Note that Ice Miller initially prepared this Application through December 31, 2019.  The Debtors then sought leave of the Court to approve interim compensation procedures that required the filing of fee statements prior to a date certain, after which fee applications could then be filed.  As a result, Ice Miller was required to draft and file the First Fee Statement and Second Fee Statement, and then redraft this Application.  The fees included in this Application for preparation of Ice Miller's fee statements and this Application total no more than $133,369.46, which is approximately 5% of the total fees sought.

73.     The Committee asserts that all of the time billed to this category constitutes reasonable and necessary expenses commensurate with a case of this size and complexity that benefited the estates at the time provided.

**Employment and Fee Application Objections (Matter 00013): $13,699.00 (22.6 hours)**

74.     This category involved reviewing the employment applications for the Debtors' professionals; filing a limited response to those applications; discussions with the Debtors' professionals regarding the Committee's objections; and the negotiation of an agreed entry resolving same.  This category also contains work relating to the review of the various reports and fee applications filed by the Debtors' professionals, including the review and objection to Huron's First Staffing Report and the resolution of issues related thereto.

75.     The Committee asserts that all of the time billed to this category constitutes reasonable and necessary expenses commensurate with a case of this size and complexity that benefited the estates at the time provided.

**Financing and Cash Collateral (Matter 00014): $87,440.50 (142.2 hours)**

76.     Most of the work in this category is related to the Debtors' DIP Financing Motion, including analysis of the DIP Financing Motion and its impact on the estates; the Committee's ability to challenge KeyBank's claims and liens; and the effect the financing and related superpriority liens would have on assets available to unsecured creditors.  This work also involved the drafting and filing the Committee's objection to the DIP Financing Motion; discussions with the Debtors and their counsel regarding the effects thereof; cash flow issues related thereto; and the need for financing in order to complete the Debtors' asset sale.  Further, work in this category involved analysis of the Debtors' cash management motion [Dkt. No. 7].

77.     The Final DIP Order granted extremely broad, sweeping relief to the Debtors in favor of KeyBank, including full cross-collateralization of superpriority liens granted to KeyBank,

27

which amounted to a de facto substantive consolidation of the Debtors' assets for purposes of securing the DIP financing facility.  To preserve the Committee's rights and protect the estates, Ice Miller and HAJ prepared a motion for stay pending appeal, assessed the likelihood of success on appeal, and prepared a notice of appeal.  Ultimately, after analyzing the circumstances and likelihood of success, the Committee elected not to appeal.

78.     The Committee asserts that all of the time billed to this category constitutes reasonable and necessary expenses commensurate with a case of this size and complexity that benefited the estates at the time provided.  Specifically, based upon the magnitude of the relief at issue and the potential that unsecured creditors would be irreversibly prejudiced by the relief granted in the Final DIP Order, the Committee asserts that the fees incurred in opposing entry of the Final DIP Order and preparing for a possible appeal thereof were reasonable and necessary when incurred, notwithstanding the Committee's ultimate election to not appeal.

**Meetings and Communications with Creditors (Matter 00015): $18,425.00 (29.9 hours)**

79.     This category includes various communications with the estates creditors.  Ice Miller professionals occasionally receives inquiries from various interested parties concerning the Chapter 11 Cases.  While Ice Miller does not represent these creditors, its professionals do their best to provide relevant and helpful information to any party making inquiries.  This category does not include meetings with the Committee itself or amongst creditors that are members of the Committee acting in that capacity – such meetings are categorized based on the purpose and subject matter of those meetings.

80.     The Committee asserts that all of the time billed to this category constitutes reasonable and necessary expenses commensurate with a case of this size and complexity that benefited the estates at the time provided.

**Non-working Travel (Matter 00016): $54,470.75 (143.2 hours)**

81.    In the course of their representation of the Committee, Ice Miller professionals have travelled to various locations, including South Bend, Kalamazoo, and Chicago, to attend hearings, engage in settlement conferences, and attend mediation.  Whenever possible, Ice Miller professionals have appeared at meetings and hearings using attorneys in the geographic areas closest to the hearing or meeting to minimize non-working travel expenses.  Further, Ice Miller has frequently used telephone or video conferencing to conduct meetings and settlement conferences to avoid non-working travel all together.  Still, for several hearings and settlement conferences, Ice Miller professionals deemed it necessary for certain individuals to attend in person based upon the strategic importance of said hearings and conferences and the issues at stake.  Where non-working travel was necessary, Ice Miller professionals attempted to use that time productively and deducted from said travel any time spent doing billable work.  Any time incurred by Ice Miller professionals in this category was billed at 50% of that professional's normal hourly rate.

82.    The Committee asserts that all of said non-working travel constitutes reasonable and necessary expenses commensurate with a case of this size and complexity that benefited the estates at the time provided.

**Plan and Disclosure Statement (Matter 00017): $42,095.50 (57.9 hours)**

83.    This category involves work related to the analysis and formulation of a plan of reorganization consistent with the Committee's powers and duties under 11 U.S.C. § 1103, as well as review of the Debtors' exclusivity motion.  Specifically, time in this category relates to the Committee's negotiations with the Debtors, KeyBank, the Khan Trustee, the Khan Entities Trustee, and the Khan Committee towards a consensual plan.

84.    The Committee asserts that all of the time billed to this category constitutes reasonable and necessary expenses commensurate with a case of this size and complexity that benefited the estates at the time provided.

**Relief from Stay and Adequate Protection (Matter 00019): $99,286.00 (166.9 hours)**

85.    Work in this category relates to the Debtors' adversary proceeding to extend the automatic stay to and impose an 11 U.S.C. § 105 injunction, 1st Source Bank's motion for relief from stay, Nancy Khan's motion for relief from stay, and Wells Fargo Bank's motion for relief from stay and the mediation related thereto.  As noted above, substantial time was spent resolving the disputes with Nancy Khan and Wells Fargo.  The resolution of these disputes provides substantial benefits to the Debtors' estates.

86.    The Committee asserts that all of the time billed to this category constitutes reasonable and necessary expenses commensurate with a case of this size and complexity that benefited the estates at the time provided.

87.    The above descriptions serve as a general summary of the services provided by Ice Miller in these Chapter 11 Cases and are intended only to highlight areas of particular importance in this case.  A complete description of all activities performed by Ice Miller is found in Ice Miller's billing statements from all Fee Statements filed to date, attached hereto as **Exhibits A-1** through **A-8**.

88.    The foregoing professional services performed by Ice Miller were necessary and appropriate to advise and represent the Committee in these Chapter 11 Cases during the Compensation Period.  The professional services performed by Ice Miller were in the best interests of the Committee, its constituents, and the Debtors' estates.  Compensation for such services as requested is commensurate with the complexity, importance, and nature of the issues and tasks

involved. The professional services were performed expeditiously and efficiently, and Ice Miller took all appropriate attempts to avoid duplication of work when possible.

## Actual and Necessary Disbursements of Ice Miller

89.     As is disclosed on **Exhibits B-1** through **B-8**, Ice Miller disbursed $44,687.30 as expenses incurred in providing professional services during the Compensation Period. These expenses are reasonable and necessary and were essential to providing the professional services during the Compensation Period.

90.     With respect to photocopying expenses, in compliance with the Fee Guidelines, Ice Miller charged $.05 per page for black and white copies and $.15 per page for color copies. Ice Miller does not charge for local or long distance telephone charges unless a multi-party conference line is used. For multi-party conference calls, Ice Miller re-charges clients the actual out-of-pocket costs incurred for use of a multi-party conference call service provider. Each of these categories of expenses does not exceed the maximum rate set by the Fee Guidelines. These charges are intended to cover Ice Miller's direct operating costs, which costs are not incorporated into the Ice Miller hourly billing rates.

91.     The amount of the standard photocopying charge is intended to allow Ice Miller to cover the related expenses of its photocopying service. A determination of the actual expenses per page for photocopying, however, is dependent on both the volume of copies and the total expenses attributable to photocopying on an annual basis.

## The Requested Compensation Should Be Allowed

92.     Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 of the Bankruptcy Code to govern the Court's award of such compensation. Section 330 provides that a Court may award a

professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual, necessary services rendered [and] reimbursement for actual, necessary expenses."  Section 330(a)(3) also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded to [a] professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> (A)    the time spent on such services;
> (B)    the rates charged for such services;
> (C)    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (D)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
> (E)    with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
> (F)    whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

93.    In the instant case, Ice Miller submits that the services for which it seeks compensation and the expenditures for which it seeks reimbursement in this Application were necessary for and beneficial to the Committee's discharge of its powers and duties in these Chapter 11 Cases.  Such services and expenditures were necessary to and in the best interests of the Committee, its constituents and the Debtors' estates.  The compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Committee and all parties in interest.

94.    Compensation for the foregoing services as requested is commensurate with the complexity, importance, and nature of the problems, issues, and tasks involved. The professional services were performed expediently and efficiently.

95.    In sum, the services rendered by Ice Miller were necessary and beneficial to the Committee and were consistently performed in a timely manner commensurate with the complexity, importance, and nature of the issues involved.  Accordingly, approval of the compensation for professional services and reimbursement of expenses sought herein is warranted.

### Reservation

96.    To the extent that fees or expenses relate to the Compensation Period but were not processed before the preparation of, or included in, this Application, or Ice Miller has for any other reason not sought compensation or reimbursement of expenses herein with respect to any services rendered or expenses incurred during the Compensation Period, Ice Miller reserves the right to request compensation for such services and reimbursement of such expenses in a supplemental or future statement or application.

### Notice

97.    In accordance with the Interim Compensation Procedures Order, a notice providing 21 days' opportunity to object to this Application will be sent to the parties listed on the Core/2002 Service List maintained by Prime Clerk for these cases.

### No Previous Requests

98.    Except for the filing of its First Fee Statement, Second Fee Statement, Third Fee Statement, Fourth Fee Statement, Fifth Fee Statement, Sixth Fee Statement, Seventh Fee Statement, and Eighth Fee Statement, no previous requests for the relief sought herein have been made by Ice Miller.

**WHEREFORE**, Ice Miller respectfully requests that this Court enter an Order on the Applications:

(A)     Approving and allowing on an interim basis fees in the sum of $2,665,399.21 as compensation for actual and necessary legal services rendered during the Compensation Period by Ice Miller in its representation of the Committee (the "Fees");

(B)     Approving the annual increase in hourly rates for Ice Miller professionals;

(C)     Approving and allowing on an interim basis expenses totaling $44,687.30 as reimbursement for actual and necessary out-of-pocket costs incurred during the Compensation Period by Ice Miller in its representation of the Committee (the "Expenses");

(D)     Directing the Debtors to disburse to Ice Miller 100% of the approved and allowed Fees and Expenses, less any amounts previously disbursed to Ice Miller pursuant to the First Fee Statement or Second Fee Statement; and

(E)     Granting such other relief as is just and proper.


[Signature on following page]

Dated: October 26, 2020                Respectfully submitted,

*/s/ Louis T. DeLucia*
Louis T. DeLucia (admitted pro hac vice)
Alyson M. Fiedler (admitted pro hac vice)
ICE MILLER LLP
1500 Broadway, Suite 2900
New York, NY 10036
Telephone: (212) 835-6312
Email: louis.delucia@icemiller.com
Telephone: (212) 835-6315
Email: alyson.fiedler@icemiller.com
*Co-Counsel for the Official*
*Committee of Unsecured Creditors*

## <u>CERTIFICATION OF COMPLIANCE</u>

I, Louis DeLucia, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury

that the following is true and accurate to the best of my knowledge and belief:

(A)    I am a partner with the applicant firm, Ice Miller LLP, and have been admitted to the bar of the state of New York since 2008.

(B)    I personally performed many of the legal services rendered by Ice Miller LLP as counsel to the Committee and am familiar with the other work performed on behalf of the Committee in by the lawyers and paraprofessionals at Ice Miller LLP.

(C)    I have reviewed the foregoing Application, and the facts set forth therein are true and correct to the best of my knowledge, information, and belief.  Moreover, I have reviewed LBR 2016-2 and the Interim Compensation Procedures Order and submit that this Application substantially complies with same.

Dated: October 26, 2020

*/s/ Louis T. DeLucia*
Louis T. DeLucia